VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     22-AP-330



*Note: In the case title, an asterisk (*) indicates an appellant and a double asterisk (**) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2023

| | |
|---|---|
| In re Grievance of Gary Stevens* | } APPEALED FROM: |
| | } Labor Relations Board |
| | } CASE NO. 21-14 |

In the above-entitled cause, the Clerk will enter:

Grievant Gary Stevens appeals a decision of the Labor Relations Board dismissing his grievance of the decision by the Department of Corrections (DOC) to terminate his employment. On appeal, grievant argues that the DOC lacked just cause to terminate him, termination was not reasonable in light of the proven charges, the Board's finding that he engaged in misconduct by deleting text messages was not supported by the evidence, and he was denied due process at the hearing before the Board. We affirm.

The Board made the following findings. Grievant was employed by the State of Vermont from August 1996 until April 2021. He worked as a probation and parole officer (PO) at the Brattleboro probation and parole office, which is part of the DOC. As a PO, grievant was responsible for supervising and monitoring individuals under the custody of the DOC and frequently had contact with crime victims. The events leading to grievant's dismissal centered around an individual, referred to as offender, whom grievant supervised from January to June 2019, and again from August 2019 to March 2020. In January 2020, grievant became aware that offender was in a relationship with a woman, complainant, and that there was a noise complaint involving complainant and offender.[1] Grievant scheduled a meeting with offender and complainant at which offender gave verbal permission to grievant to disclose confidential information to complainant. In February 2020, offender was arrested for domestic assault of complainant, offender's furlough status was revoked, and new charges were filed against offender.

In March 2020, offender was reassigned to a different PO. Although grievant's supervisor did not remember whether she told grievant that offender was reassigned, grievant would have noticed the change when he accessed the management system. Under DOC guidance, POs are instructed to contact the partner of a domestic offender at least once a month.

---

[1] The parties stipulated to a protective order, agreeing to use offender and complainant instead of the individuals' names.

Despite the reassignment, grievant continued to have contact with complainant. From February to April 2020, grievant and complainant exchanged 647 text messages. Grievant also met complainant twice in person: once at complainant's apartment on March 12, 2020, and once on a public street on March 19, 2020.

When grievant went into complainant's apartment on March 12, he observed underwear scattered around the apartment. Complainant apologized, and grievant responded that if complainant went commando, she would not have the problem of having underwear lying around. At the end of the visit, complainant walked grievant outside and gave grievant a hug. Grievant was surprised by the hug and patted complainant on the shoulder. There were text messages in later exchanges regarding the visit in which complainant apologized for having a vibrator lying around and stated she had to "be more careful of free ballin men coming over." Grievant responded that he "was chalking [the vibrator] up to a muscle massager lol," and that "freeballin sounds like an awesome song name." In later text messages, complainant characterized grievant as a "pervert" and stated that he had been super close to her backside when she felt his "thing" and he had said he was "commando." Grievant replied that he was not a "pervert," clarifying that he made the commando statement about complainant, not himself, and that he was sorry he had made the joke.

In addition to these specific texts, other messages between grievant and complainant contained personal and intimate information that strayed beyond issues dealing with offender or victim support. Grievant did not discourage the texts or set limits on the scope of topics. During these exchanges, complainant asked grievant to delete their text messages and grievant confirmed that he did. While communicating with grievant, complainant was also in frequent contact with offender through the DOC telephone system despite the fact that there was a no-contact order. In those communications, complainant told offender that complainant would "fix" offender's situation and that grievant would not investigate offender's telephone numbers because complainant could have grievant's job.

On March 24, 2020, offender made a complaint to the DOC that grievant was having an inappropriate relationship with complainant. A couple of weeks later, complainant telephoned grievant's district manager and left a message alleging grievant engaged in inappropriate conduct, including sexual misconduct. The matter was referred to the police department. Despite attempts to contact complainant, she did not make herself available for an interview. In April 2020, the Department of Human Resources initiated an investigation and notified grievant that it was investigating him for misconduct. During the investigation, grievant admitted that he engaged in text messaging with complainant, acknowledged that he met complainant at her apartment, and was candid about the lurid and vulgar language in the text messages. Nonetheless, he stated that his interactions with complainant were always professional. He stated that the sole physical contact with complainant was a hug where he touched her upper back, and he denied ever rubbing his penis against complainant's body as was alleged. The investigator took possession of grievant's work phone and found only a couple of text-message exchanges between grievant and complainant. Grievant stated that he had unintentionally deleted his text messages with complainant.

In October 2020, the DOC sent grievant a Loudermill letter alleging that grievant committed misconduct in five ways: (1) inappropriate conduct with complainant and failure to maintain boundaries based on the text messages that included discussion of a sex toy, the victim's underwear, and sexual innuendos; (2) sexual misconduct for rubbing his penis against the complainant during his visit to her apartment; (3) misconduct during the investigative

2

interview; (4) violation of DOC dispatch rules and directives for going on field visits by visiting complainant without another employee, notifying dispatch, or using a state vehicle; and (5) disclosure of confidential information about offender to complainant. Grievant was subsequently terminated based on these allegations.

Grievant appealed to the Vermont Labor Relations Board. Following a hearing over several days, the Board found that the State had proven three of five alleged types of misconduct. First, the Board found that grievant engaged in unprofessional conduct with complainant by engaging in a relationship with complainant that went beyond professional interactions, including exchanging voluminous communications that contained flirtatious and vulgar messages. Second, the Board found that grievant engaged in misconduct during the investigation by untruthfully stating that he had accidentally deleted the text messages.[2] Third, the Board determined that grievant violated his supervisor's directive to contact dispatch, use a state vehicle, and go with another state employee when conducting field work.[3] On the other hand, the Board determined that the State failed to prove that grievant violated confidentiality rules, or engaged in the sexual misconduct alleged.

The Board then carefully weighed several factors to determine whether grievant's discharge was supported by just cause. The Board found that several factors weighed in favor of termination. The seriousness of the proven offenses was significant in relation to grievant's position, and grievant's supervisor lost trust in grievant's ability to perform his work due to his untruthful and unprofessional conduct. The Board also noted that termination was consistent with past cases where employees were dismissed for engaging in dishonest behavior and committing misconduct. Grievant had express and clear notice of his responsibilities to be honest with the committee, to avoid unprofessional and vulgar behavior, and to comply with field-work requirements. These factors were not outweighed by the fact that grievant had been employed for nearly twenty-five years, that grievant had not previously committed misconduct, and that rehabilitation weighed in grievant's favor. The Board noted that although grievant deleted the text messages, he did retrieve them and provide them to the State and the absence of the messages did not thwart the investigation. Moreover, grievant admitted that he engaged in

---

[2] The State alleged that grievant was untruthful during the investigation because he falsely claimed that: he deleted his text messages accidentally, his texts with complainant were professional, and he did not commit sexual misconduct. The Board agreed that grievant was untruthful regarding deleting the texts but found that the State did not prove that grievant was untruthful when he said that his interactions with complainant were professional or that he did not engage in sexual misconduct.

[3] The State found that grievant violated both an interim memo on DOC Dispatch Rules and his supervisor's directives. The interim memo requires staff performing field work to be accompanied by another staff member, use a state vehicle, and contact dispatch when going into the field. In addition to this memo, grievant's supervisor directed grievant to utilize dispatch services, travel in a state vehicle, and have another state employee with him when conducting any kind of field work. This requirement was highlighted in grievant's March 2020 performance evaluation. The Board found that the State did not prove by a preponderance of the evidence that grievant violated the DOC Dispatch Rules because the interim memo did not impose requirements on meeting with people other than offenders. The Board found, however, that grievant was on notice of his supervisor's directive and violated that directive twice when he met with complainant.

text messaging with complainant, made inappropriate comments, and visited her twice without an additional staff member, a state vehicle, or a notice to dispatch. In sum, the Board found that the State acted reasonably in discharging grievant. Grievant appealed to this Court.

We first address grievant's argument that the evidence does not support the Board's finding that grievant "engaged in a cover up by deleting the text messages." We give deference to the Board's conclusions and "do not overturn them when they are supported by the findings." In re Brown, 2004 VT 109, ¶ 13, 177 Vt. 365. We do not reweigh the evidence on appeal and "[i]f the Board's findings are supported by the evidence, then we will uphold them." In re Vt. State Colls. Fac. Fed'n, AFT Loc. 3180, 2019 VT 50, ¶ 47, 210 Vt. 476.

Grievant's argument mischaracterizes the Board's finding regarding his deletion of the texts. The Board did not intuit a motive to grievant for deleting the messages and did not find that there was a "cover up." The Board found that grievant was untruthful during the investigation because he stated that he had deleted his text messages inadvertently and this was false. The following evidence supports the Board's finding: grievant several times texted complainant that he deleted their text conversations, grievant had his work cellphone for three-to-four years so it was unlikely he did not know how to delete messages, and deleting messages required a two-step process with a prompt asking if the user wanted to delete the messages. The Board's finding is supported and not erroneous.

Grievant next argues that employer dismissed him without good cause and that termination was not reasonable. A state employee may be disciplined for just cause, which is a question of reasonableness. In re Jewett, 2009 VT 67, ¶¶ 22-23, 186 Vt. 160. To demonstrate just cause, the employer must show "first, that the conduct was sufficient to warrant dismissal, and second, that the employee had fair notice that such conduct could result in dismissal." Id. ¶ 22. "In a grievance proceeding, the Board's role is limited to determining whether the State met its burden of demonstrating by a preponderance of the evidence that there was just cause for dismissal." Id. ¶ 23. In assessing the reasonableness of the State's termination, the Board applies the Colleran factors. See id.

> These twelve factors are: the nature and seriousness of the offense, the employee's job level and type of employment, the employee's past disciplinary record, the employee's work record, the effect of the offense on the employee's ability to perform satisfactorily, the consistency of the penalty with those imposed upon other similarly situated employees, the consistency of the penalty with any applicable agency table of penalties, the notoriety of the offense or its impact on the reputation of the agency, the clarity of notice, the potential for the employee's rehabilitation, mitigating circumstances surrounding the offense, and the adequacy and effectiveness of alternative sanctions to deter such conduct in the future.

Id. Not all factors are relevant in each case and the State must just demonstrate that "on balance the relevant factors support" its decision. Id.

Grievant asserts that once the Board found that the State failed to prove sexual misconduct, there was no longer a sufficient basis for dismissal. Grievant characterizes the remaining misconduct as engaging in "inappropriate or vulgar jokes." He argues that he was not

on notice that this type of conduct could be grounds for termination and that this conduct was insufficient to support termination. Grievant contends that some Colleran factors should be weighed more heavily in his favor, including his lack of past discipline, his cooperation during the investigation, his efforts to retrieve the text messages, and the possibility of rehabilitation.

Grievant essentially challenges the Board's assessment regarding the weight of the evidence and seeks to reweigh the factors. This is not our role on appeal. See Vt. State Colls. Fac. Fed'n, 2019 VT 50, ¶ 47 (explaining that "it is not our role to reweigh the evidence" and findings will be upheld if supported by the evidence). The evidence supports the Board's finding that the State proved three charges. Grievant failed to maintain appropriate boundaries with complainant and engaged in an unprofessional and inappropriate relationship. Grievant was not truthful during the investigation insofar as he falsely asserted that his text messages were inadvertently deleted. Lastly, grievant violated his supervisor's directive to contact dispatch, travel in a state vehicle, and travel with another staff member when leaving the office for field work. Moreover, grievant had notice that his behavior was prohibited.

The Board carefully considered the Colleran factors to determine whether there was just cause to terminate grievant. The Board found several factors weighed in favor of the State and supported the reasonableness of the termination decision. The Board concluded that, although the State had not proven sexual misconduct, grievant's proven misconduct was serious. The Board emphasized that grievant's misconduct of failing to maintain professional boundaries was particularly serious given grievant's role as a PO and his interactions with the public, which jeopardized the public's trust in the DOC. Grievant's characterization of his misconduct as limited to rude or vulgar jokes is simply not supported by the record. His reliance on Lombardo v. Ohio Bureau of Employment Security, is misplaced since grievant's conduct of engaging in a long-term unprofessional relationship, coupled with his other misconduct, went far beyond the isolated profane comment made in that case. 695 N.E.2d 11, 14 (Ohio Ct. App. 1997). The Board further found that the misconduct resulted in the State's loss of confidence in grievant's ability to perform his job. The Board found that dismissal was consistent with discipline given for other similar situations where dishonesty was coupled with other misconduct. The Board found that grievant had notice of all three charges, although it acknowledged that it was unclear what the discipline might be for failing to comply with field-work requirements. The Board weighed the facts that grievant had not been disciplined in the past and that he cooperated with the investigation, and considered the possibility of rehabilitation, but concluded these factors were outweighed by the seriousness of the misconduct, which reasonably led the DOC to lose confidence in his ability to do his duties. The Board's findings are supported by the evidence, and those findings in turn support its conclusions. Therefore, there are no grounds to reverse its decision.

Finally, grievant contends that the State violated his due process rights by failing to provide him with recordings or transcripts of the prison telephone calls between complainant and offender until partway through the hearing. On the second day of hearings, grievant's attorney became aware that the recordings of the telephone calls between complainant and offender existed and had not been previously provided by the State. The Board directed the State to provide the recordings to grievant and adjourned the hearing to allow time for grievant to review the materials. The Board indicated it would reconvene for another day of the hearing. All parties consented to this course of action. At the continued hearing day, the parties stipulated to admit the recordings. Grievant made no objection that his due-process rights were implicated by this process in any way. Because grievant did not raise this argument below, it is not preserved

for appeal.  <u>Follo v. Florindo</u>, 2009 VT 11, ¶ 14, 185 Vt. 390 ("In general, issues not raised at trial are unpreserved, and this Court will not review them on appeal.")

      <u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
William D. Cohen, Associate Justice


_____
Denise R. Johnson, Associate Justice (Ret.),
Specially Assigned